IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ZIELINSKI, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-2812 |
| | : | |
| CITY OF EASTON, OFFICER | : | |
| THOMAS MIGLIORE, and | : | |
| SGT. STEPHEN HOMOKI, | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                             September 24, 2009

**I. INTRODUCTION**

Plaintiff John Zielinski, a former Easton police officer, has sued his former employer and fellow officers for using excessive force in restraining him. He has failed to state any claims against the defendants. Therefore, the defendants' motion to dismiss will be granted.

**II. BACKGROUND**

Defendants removed this §1983 "excessive force" case from Northampton County court.[1] Zielinski, an Easton police officer, alleges that on May 6, 2007, while he was off-duty defendant Officer Thomas Migliore used "an illegal neck restraint which is considered deadly force" on him. He states defendant Sgt. Stephen Homoki ordered

---

[1] It appears the initial filing in state court was erroneous and the plaintiff's attorney meant to file the case in federal court. In the final sentence of the original complaint, he requests an amount in excess of the $150,000 "limit for arbitration in *the District Court for the Eastern District of Pennsylvania.*"

1

Officer Migliore to use the "illegal neck restraint."  He was then surrounded by four armed officers.

According to Zielinski's complaint, the following events led to the illegal neck restraint.  Zielinski "does not deny that he had been drinking alcohol" on May 6, 2007.  He states he was walking home at 1:00 A.M. (he does not specify from where) when fellow Officers Ryan Celia and Kevin Krische encountered him.  He told the officers he was "going to a bar to meet his girlfriend" and accepted a ride from the officers.  The officers drove him to the bar.  At 2:00 AM, Zielinski left the bar.  On his way home, he fell into a "depression," scratched his head, and his clothes became dirty "from falling into mulch."  He ended up at a Wawa, where he again saw Officers Celia and Krische.  He told them that he was "okay" and continued walking home.  Seven blocks later, however, he was surrounded by four officers, with three patrol cars and an unknown number of K-9s.  A K-9 barked and "startled" the plaintiff.

At some point, Homoki gave orders for Zielinski to be grabbed and dragged by the officers.  Zielinski, however, "knowing the appropriate police tact and procedure, believing he was under attack, tried to free himself from their grasp, and began to shout." Zielinski alleges he was forced to the ground, placed on his left side, handcuffed behind his back, and immobilized.  He states Officer Migliore then said "lights out" and used the illegal neck restraint which "cut off his blood supply," "rendered him unconscious," and

2

"humiliated"him.[2] There is no mention of the use of the illegal neck restraint in the police report of the incident.

Homoki took the plaintiff to the station, did a non-criminal, internal investigation, and would not permit Zielinski to leave until Captain Vangelo arrived. Captain Vangelo arrived, placed Zielinksi on administrative leave, and permitted him to leave.[3]

Zielinski's complaint mentions Zielinski had filed a grievance against defendant Homoki in January 2007, protesting Homoki's promotion. That grievance was "unresolved" on May 6, 2007.

Following the events that form the basis of Zielinski's complaint and the city's subsequent termination of his employment, a collective bargaining arbitration occurred, and an opinion was written. See Exhibit A, at 2-3, 11 to Defendants' Motion to Dismiss. This opinion provides additional details about the May 5, 2007 and May 6, 2007 events. First, Zielinski made several phone calls from his cell phone to Northampton County 911. The arbitrator stated,

> While on Smith Avenue, Officer Zielinski tried to call his girlfriend on his cell phone. Repeatedly, his phone reached Northampton County 911. He told the dispatcher that his cell phone was broken and was defaulting to 911. A short time later, he reiterated this to Officer Celia. He did give his first and last

---

[2] Apparently, up until that time, Zielinski had not been humiliated, even though he was observed by his fellow officers stumbling around, looking for his girlfriend, wandering into a Wawa, falling into depressions, scratching his head, and getting covered with mulch.

[3] Subsequently, Zielinski was terminated. He was then reinstated and suspended for several months. He states his "economic horizons" have been "shortened" as a result of this incident.

name to the dispatcher on the first call. However, the dispatcher instructed him to lock his keyboard, which Officer Zielinski did not do. Instead, he continued to use his phone causing him again to call the 911 center. In the last call, he refused to give his last name to the dispatcher. On the 911 center audiotape, he was audibly confused and intoxicated. Id. at 2.

Second, although Zielinski was "scheduled to begin his normal shift at 7:00 a.m. on May 6, 2007," on the evening of May 5, 2007 he had "had dinner with his girlfriend and then went to a bar for several hours where he consumed a significant amount of alcohol . . . then had an upsetting argument with his girlfriend at her residence . . . [and] decided to return to a bar to drink more alcohol." See Ex. A at 2. "A little after 1:00 a.m. . . . [he] stopped in front of the police station in downtown Easton. He used the public police telephone to reach a dispatcher for the purpose of calling in 'sick' for his shift, which was to commence in about six hours." Id. at 2-3.

Third, the Wawa at which Zielinski was observed by his fellow officers was on College Hill. The arbitrator stated that on a weekend night, Zielinski "could hardly have chosen a more inappropriate location. It is frequented by young people, including Lafayette students. He had the classic signs of intoxication, as well as dried blood on his forehead and mulch on his clothing." Id. at 12.

Fourth, the arbitrator's decision explains that when his fellow officers saw Zielinski at the Wawa, they phoned their supervisor, Sgt. Homoki. Homoki heard about Zielinski planned walk home, but knew "Zielinski lived in Plainfield Township, about seven miles from the Wawa, and that the roads into Plainfield Township were rural and

without sidewalks." Id. at 3 (emphasis deleted). The decision also reveals Zielinski tried to open the passenger door of Homoki's K-9 vehicle, exposing himself to danger from the police dog. Id. at 4. In addition, Homoki "offered Officer Zielinski the option of a ride home or a ride to his girlfriend's home." Id. After this offer, Zielinski began to shout obscenities, swing his arms, and take an aggressive stance with his fellow officers. Id. at 12. Local residents were awakened and heard the "F" word screamed 20-40 times. Id. at 12. According to the arbitrator's decision, the Easton police department did not use force to restrain Zielinski until after their offered ride and help were met with threats from their fellow officer.

### III. DISCUSSION

#### A. Federal Claims

#### i. City of Easton: No policy or custom alleged

A municipality can be liable under Section 1983 if the constitutional violation alleged is the result of a policy or practice officially adopted by the governing body or an informally-adopted custom. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Here, Zielinski has not set forth "sufficient factual matter, [which this court would] accept[] as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). Specifically, there is not a single fact stated that could be construed as supporting Zielinski's contention the City maintained an excessive force policy or custom with

"deliberate indifference" to the constitutional deprivations that the policy or custom caused.  See City of Canton v. Harris, 489 U.S. 378, 389 (1989).  In fact, Zielinski alleges just the opposite.  He states that the illegal neck restraint used against him was "strictly prohibited by Defendant City of Easton's policy." Compl. ¶31.  As an Easton police officer, Zielinski is in the best position to know the City's policies and customs.

The Federal Rules of Civil Procedure require "more than labels and conclusions" to survive a motion to dismiss. "[A] formulaic recitation of the elements of a cause of action will not do."  Book v. Merski, 2009 WL 890469 (citing Twombly, 550 U.S. 544).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," Id. at 1950.  Therefore, because Zielinski's complaint fails to state a plausible claim against the City of Easton, the claim against Easton will be dismissed.

**ii. Officer Thomas Migliore: No claim stated**

Excessive force claims, such as the one brought against Officer Migliore, are analyzed under the Fourth Amendment "objective reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The standard is not what a reasonable officer would have done with 20/20 hindsight.  See id. at 396.  Here, under the facts as described in Zielinski's complaint, a reasonable officer on the scene would have found Migliore's actions objectively reasonable.

Officer Migliore knew Zielinski had been drinking and was fighting the officers - Zielinski's co-workers - who were continuing their efforts to help him during his evening

of debauchery. According to Zielinski, he believed "he was under attack" and "tried to free himself from their grasp." Compl. ¶27. A few moments later Zielinski was "immobilized" by the officers, and had his neck squeezed by Officer Migliore which rendered him unconscious. Compl. ¶30.

Plaintiff's version of the facts show that probable cause existed to seize him. He had been drinking, was non-compliant, and was trying to "free himself" from the officers with whom he worked and who were trying to assist him in his drunken state. Under Whren v. United States, 517 U.S. 806, 817 (1996), seizures are deemed reasonable where probable cause exists. In cases such as this one, where force was used, I must consider (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the possibility that the person subject to the police action is violent or dangerous; (5) the duration of the action; (6) whether the action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed; and (8) the number of persons with whom the officers must contend at one time. Id.

Officer Migliore and the other officers knew Zielinski had been walking around Easton in an inebriated state and was a danger to himself. He had fallen down, was covered with dirt, and had cut his head. Compl. ¶18. He was attempting to walk home, Compl. ¶19, and was a danger to himself and to people driving along the road he was attempting to navigate. He was trying to get away from the officers. Compl. ¶27. He was

was a trained law enforcement officer, knew "appropriate police tact and procedure," and likely had the same training in the use of force that his fellow officers possessed. In addition, presumably because he was a police officer, he often possessed a firearm, Therefore, there was a high possibility that Zielinski was armed. Compl. ¶27. His efforts to free himself from his fellow officers' grasp was a threat to their safety and to the community. He was actively resisting arrest. He was violent and presumably dangerous. The force used by Officer Migliore was brief and took place while he was arresting the drunken and resisting Zielinski. Accordingly, a reasonable officer on the scene would have found it necessary to subdue Zielinski using the brief, effective technique used by Officer Migliore.

Further, no clearly established law in the Third Circuit indicates neck restraints are *per se* unreasonable. In Pride v. Does, 997 F.2d 712 (10th Cir. 1993), the Tenth Circuit found the use of a choke hold objectively reasonable where the plaintiff was drunk and being questioned in a police station. In that case, the only provocation was that the plaintiff "started forward" with a "threatening and intense expression" on his face. Id. at 714. In Pride, because he was in a police station, there was no chance the plaintiff was armed, nor was there much chance that he was a danger to the public. The choke hold was not used in the course of a seizure or arrest. Unlike Pride, Officer Migliore used the hold during a seizure and arrest, and it was not used at the police station. Moreover, there was a chance Zielinski was armed and a danger to the public.

To the extent Zielinski has attempted to plead a Fourteenth Amendment claim against Officer Migliore, it will be dismissed. Excessive force claims are actionable under the Fourth Amendment, not under the substantive due process clause. Graham, 490 U.S. at 394-95.

To the extent Zielinski attempts to claim an Eighth Amendment violation, it will be dismissed. The cruel and unusual punishment proscription applies only to people who have been convicted of crimes. Ingraham v. Wright, 430 U.S. 651, 667-68 (1977).

### iii. Sargeant Stephen Homoki:  No claim stated

The only allegations Zielinski makes with respect to Sgt. Homoki are:

(1) he was present when Zielinski was restrained and issued orders relating to the May 6, 2007 incident, Comp. ¶10;

(2) he pulled alongside Zielinski on the road and his K-9's barking "startled" Zielinski, Compl. ¶21;

(3) Zielinski had filed a grievance about Sgt. Homoki's promotion in January 2007 that was unresolved on May 6, 2007, Compl. ¶22;

(4) Zielinski was detained at the police station and subject to a non-criminal investigation by Sgt. Homoki, Compl. ¶34; and

(5) Sgt. Homoki told Zielinski he could not leave the station until Capt. Vangelo arrived, Compl. ¶35.

Plaintiff's only enumerated count in the complaint against Sgt. Homoki is titled

"1983" violation, but it appears the violations alleged arise under the Fourth and Fourteenth Amendments to the constitution.

First, Zielinski's Fourth Amendment claim against Homoki is that Homoki was present when he was restrained and his K-9 dog "startled" Zielinski. Zielinski's does not allege Homoki's force was excessive. Therefore, Zielinski has failed to state a Fourth Amendment claim against Homoki.

Second, Zielinski's claim is not cognizable under the Fourteenth Amendment. Homoki's actions, as alleged by Zielinski, do not rise to the level of "conscience shocking." Cannon v. City of Philadelphia, 86 F.Supp.2d 460, 467 (E.D. Pa. 2000) (citing County of Sacramento v. Lewis, 523 U.S. 833 (1998)). Accordingly, the claim will be dismissed.

Finally, in light of clearly established law and the information Sgt. Homoki possessed, a reasonable officer could have believed his conduct was lawful. There is no clearly established law prohibiting officers from being present, even if other officers present were engaging in "unconstitutional" conduct.[4] Moreover, possession of a K-9

---

[4] Zielinski states in boilerplate fashion that his claims against Sgt. Homoki include a theory of "failure to act in accordance with a duty imposed upon him." Compl. ¶ 4. Even if this language is to be construed as a failure to intervene claim, it still must fail completely. To establish a Fourth Amendment claim of failure to intervene, a plaintiff must establish that (1) the police officer failed or refused to intervene when a constitutional violation took place in his presence or with his knowledge and (2) there was a "realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). The factors to determine whether a reasonable opportunity to intervene existed include the temporal length of the alleged assault, the proximity of the non-intervening officer to the assault, the ability of the non-intervening officer to process and/or hear the alleged assault. Armbruster v. Marguccio, 2006

dog in a marked police vehicle is conduct that a reasonable officer would have believed was lawful.

### B. State Constitutional Claims

The only claim possibly remaining in this case is a state law claim. The issue of whether the Pennsylvania constitution provides a cause of action for money damages has been determined by several federal courts to involve a complex and novel issue of state law. Consequently, many federal courts have declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice. See, e.g., Mitchell v. Street, 415 F.Supp. 2d 490, 498 (E.D. PA. 2005) (dismissing state constitutional claims without prejudice); Mulgrew v. Fumo, 2004 WL 1699368 (E.D. Pa. July 29, 2004) (declining to accept jurisdiction because state courts are better equipped to determine causes of action under the Pennsylvania constitution and stating that Pennsylvania does not permit monetary damages or equitable relief for such claims). This court will do the same.

### IV. CONCLUSION

For the foregoing reasons and because amending the Complaint would be futile,[5]

---

WL 3488969, 8 (W.D. Pa., Dec. 4, 2006) (internal citations omitted). Under the facts alleged in Zielinski's complaint, Officer Migiore's neck restraint occurred during a struggle between Officer Migliore and the plaintiff. It was used for a short period of time and there would have been no opportunity for Homoki to intervene, under the facts as stated by Zielinski.

[5] Zielinski has had several "bites at the apple." On September 4, 2008, he filed a complaint in this court against the same defendants alleging that his rights under Section 1983 had been violated. See case number 08-cv-4244. When defendants filed a motion to dismiss, he

the federal constitutional claims shall be dismissed with prejudice.  I will decline to exercise jurisdiction over the state constitutional claims and dismiss them without prejudice to Zielinski pursuing them in state court.

     An appropriate order follows.

---

amended his complaint to include only state-law claims.  The case was closed and this court exercised no jurisdiction over the state-law claims.  Zielinski then filed this case in state court, alleging *only* a federal claim.  Defendants removed it here.  Additionally, these events were the subject of a collective bargaining arbitration and a 23-page opinion from an arbitrator resulted.  Zielinski's grievances about May 6, 2007 have been, and perhaps are still being, stated and re-stated in various fora.